

FILED
11/28/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 826 |
| v. | |
| KARL QUILTER | Judge Virginia M. Kendall |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant KARL QUILTER, and his attorney, DONNA FOLEY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.    The indictment in this case charges defendant with sexual exploitation of children (Counts 1-3, 5-6), in violation of Title 18, United States Code, Section 2251(a), and receipt of child pornography (Count 4), in violation of Title 18, United States Code, Section 2252A(a)(2)(A).

3.    Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

**Charge to Which Defendant Is Pleading Guilty**

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count 1, which charges defendant with sexual exploitation of children, in violation of Title 18, United States Code, Section 2251(a).

**Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count 1 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

From approximately in or around February 2018 and continuing to approximately in or around April 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant KARL QUILTER knowingly employed, used, persuaded, induced, and enticed a minor, namely, Minor E, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction defendant knew and had reason to know would be transported and transmitted using any means and facility of interstate and foreign commerce, and that visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, and which visual depiction was actually transported and transmitted in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 2251(a).

2

More specifically, from approximately in or around February 2018 to approximately in or around April 2020, QUILTER knowingly employed, used, persuaded, induced, and enticed Minor E, who was 14 years old in February 2018, and living in the Philippines throughout the above-referenced time period, to engage in sexually explicit conduct that involved the lascivious exhibition of Minor E's genitals and pubic area, for the purposes of having Minor E take photos and videos of the sexually explicit conduct. QUILTER knew that Minor E was in the Philippines and only 14 to 16 years old at the time that they were communicating. Through Facebook, QUILTER directed Minor E to take images and videos of herself that involved sexually explicit conduct and send them to QUILTER, and sent money by wire transfer to Minor E's family in exchange for such images and videos. Defendant acknowledges that Facebook is an interactive computer service.

For example, on or about February 8, 2018, QUILTER sent Facebook messages to Minor E requesting, "good pics u know what I like," and commented, after receiving nude photos from Minor E displaying her breasts and pubic area, that "these are not good I cannot see anything . . . I can't even see your breast or your pussy I said I want you to open pussy like u did before," and ". . . I want to see you put all your finger inside but take pic on side so I can see the finger go in all the way." On the same day, QUILTER received multiple close-up photos from Minor E showing her genitalia, including photos in which she was using her fingers to spread apart her labia. QUILTER also reminded Minor E "to always delete all our conversations." On or about February 26, 2018, Minor E sent additional images of her genitalia to QUILTER, to

3

which QUILTER responded, "Good job u have a very sweet pussy I hope this time when I go back their [sic] I can fuck my gf u said u my gf right."

On or about March 11, 2018, QUILTER messaged Minor E, "Ok I will send [money] but first u send the 5 pics of pussy but I want one like the first one u send like sample but put your finger all in from front so I can see it go far inside." QUILTER then received photos from Minor E depicting her genitalia with her finger inserted inside her vagina.

On or about December 18, 2018, QUILTER messaged Minor E demanding a video in which, "I want to see your facial expression when finger is in . . . I want to see the f[i]ngers go in and out." Minor E then sent a video of herself nude, masturbating, inserting her fingers in her vagina, and displaying her genitalia, and QUILTER later messaged that he had sent money.

On or about March 22, 2019, QUILTER messaged Minor E regarding a possible tattoo, writing, "What if we put inside your thigh that's inside your legs near your pussy we put Property of CONRAD," referring to one of QUILTER's middle names. On or about March 24, 2019, QUILTER messaged Minor E demanding "all videos that u ma[]sturbate I ask u to put fingers all the way inside pussy . . . ." Minor E responded in part, "My god dad im only 15 years old and u want me to put my all finger? Mygod" before sending multiple videos of herself to QUILTER depicting Minor E's genitalia as she masturbated. On or about March 28, 2019, QUILTER messaged Minor E again telling her to "delete all conver[s]ations and videos." On or about July 29, 2019,

QUILTER messaged Minor E again instructing her to "please delete all our conversations."

On or about April 3, 2020, QUILTER messaged Minor E demanding a video of her penetrating herself with a bottle and with her face showing, and Minor E sent multiple videos depicting her doing so in response. QUILTER replied, "U did a very good job but I cant see clearly if the bottle is in your [p]ussy [o]r u [j]ust [p]retend its inside."

In total, QUILTER solicited and received approximately 91 nude photos of Minor E, including approximately 60 photos in which her genitalia are exposed, and approximately 54 nude videos of Minor E in which her genitalia are exposed and/or she appears to be masturbating. QUILTER acknowledges that these images and videos from Minor E depicted Minor E lasciviously exhibiting her genitals and/or pubic area. In exchange for such images and videos, QUILTER sent approximately 18 wire transfers totaling approximately $1,620 U.S. dollars to Minor E's family.

7.    Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offense(s):

<u>Stipulated Offense One (Count 4 and Relevant Conduct Regarding Minor I)</u>

On or about November 14, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, QUILTER knowingly received child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), using a means and facility of interstate and foreign commerce, and that had been shipped and transported in or affecting interstate and foreign commerce by any means, including by computer.

5

More specifically, from approximately in or around November 2018 to approximately in or around January 2020, QUILTER knowingly employed, used, persuaded, induced, and enticed Minor I, who was 15 to 17 years old during that time period, and living in the Philippines throughout that time, to engage in sexually explicit conduct that involved the lascivious exhibition of Minor I's genitals and pubic area, for the purposes of having Minor I take photos and videos of the sexually explicit conduct and send them to QUILTER. QUILTER knew that Minor I was in the Philippines and under the age of 18 at the time that they were communicating. Through Facebook and Viber, QUILTER directed Minor I to take images and videos of herself that involved sexually explicit conduct and send them to QUILTER, and sent money by wire transfer to Minor I's family in exchange for such images and videos.

For example, on or about November 14, 2018, QUILTER received multiple photos from Minor I depicting her bare breasts, her genitalia, and/or appearing to show her masturbating, and including images that QUILTER acknowledges depicted Minor I lasciviously exhibiting her genitals and/or pubic area. That same day, QUILTER responded, in part, "Baby why u did not listen to me . . ." and ". . . I told u I want u to open it with your fingers . . . ."

Also, on or about March 28, 2019, QUILTER received additional photos from Minor I that he acknowledges depicted Minor I lasciviously exhibiting her genitals and/or pubic area, and Minor I offered, in sum and substance, to send QUILTER videos. QUILTER responded, "For now I will accept but only if I can see your face like u have told me u have face in video and only if u put fingers inside your pussy and

6

ma[]sturbate like u see in the youtube videos . . . ." On or about March 30, 2019, after Minor I referenced possibly telling her mother about QUILTER demanding explicit videos, QUILTER wrote, "Why are u doing this to me I taught u said u love me and this is our secret and u said u don't want me to go to jail."

In total, from approximately in or around November 2018 to approximately in or around January 2020, QUILTER received approximately 53 nude photos of Minor I, including 50 files in which her genitalia are exposed. In exchange for such images from Minor I, QUILTER sent approximately 15 wire transfers to Minor I's family.

Stipulated Offense Two (Count 2)

Also, from approximately in or around October 2019 and continuing to approximately in or around June 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, QUILTER knowingly employed, used, persuaded, induced, and enticed a minor, namely Minor G, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction defendant knew and had reason to know would be transported and transmitted using any means and facility of interstate and foreign commerce, and that visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, and which visual depiction was actually transported and transmitted in and affecting interstate and foreign commerce.

More specifically, from approximately in or around October 2019 to approximately in or around June 2020, QUILTER knowingly employed, used,

persuaded, induced, and enticed Minor G, who was 12 to 13 years old in 2019 and 2020, and living in the Philippines throughout that time, to engage in sexually explicit conduct that involved the lascivious exhibition of Minor G's genitals and pubic area, for the purposes of having Minor G take photos and videos of the sexually explicit conduct. QUILTER knew that Minor G was approximately only 13 years old at the time they were communicating, and that Minor G was in the Philippines through 2019 and 2020. Through Facebook and Viber—an encrypted messaging app—QUILTER directed Minor G to each take images and videos of herself that involved sexually explicit conduct and send them to QUILTER, and sent money by wire transfer to Minor G's family in exchange for such images and videos.

For example, on or about October 11, 2019, QUILTER messaged Minor G at her and her sister Minor H's shared Facebook account, demanding "videos you and [Minor H] supposed to send me 4 videos . . . each with face and no cl[o]thes and 10 pics always with face no clothes . . . ." On or about October 30, 2019, QUILTER messaged Minor G and Minor H at their shared Facebook account, "Don't ever send me videos or pics with clothes on I don't want it." QUILTER also demanded additional nude and explicit videos and photos of Minor G and Minor H in or around November 2019.

On or about December 28, 2019, Minor G messaged QUILTER that she had the "[f]irst day of my period just yesterday" and "am a real lady now," and QUILTER responded, "am hap[p]y to hear that so meaning now we can have Sex when I go their [sic] baby i will make you very happy i will be the first man to have Sex with you I will be the one to get your Virginity baby I love you and yes u are doing go[o]d but its

8

always the same thing but this time you did some different u did it from behind I like that but nex[t] time make sure the camera see your pussy from behind when u bend down and u open it ok." In or around February 2020, QUILTER proposed using code words to be safe on Facebook when referring to Minor G, Minor H, and QUILTER. From approximately in or around February 2020 to in or around June 2020, QUILTER, and Minor G also communicated through Viber, and Minor G sent photos and videos to QUILTER through Viber. In or around October 2019 and June 2020, QUILTER sent multiple messages telling Minor G (and Minor H) to delete their conversations.

From approximately in or around October 2019 to approximately in or around June 2020, QUILTER received approximately 81 nude photos of Minor G, including approximately 63 files in which Minor G's genitalia are exposed, approximately 32 nude videos of Minor G in which her genitalia are exposed and/or she appears to be masturbating. QUILTER acknowledges that these images and videos from Minor G depicted Minor G lasciviously exhibiting her genitals and/or pubic area. In exchange for such images and videos from Minor G, and her sister Minor H, QUILTER sent approximately 20 wire transfers totaling approximately $3,920 U.S. dollars to Minor G's (and Minor H's) family.

<u>Stipulated Offense Three (Count 3)</u>

Also, from approximately in or around October 2019 and continuing to approximately in or around June 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, QUILTER knowingly employed, used, persuaded, induced, and enticed a minor, namely Minor H, to engage in sexually explicit conduct

9

for the purpose of producing a visual depiction of such conduct, which visual depiction defendant knew and had reason to know would be transported and transmitted using any means and facility of interstate and foreign commerce, and that visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, and which visual depiction was actually transported and transmitted in and affecting interstate and foreign commerce.

More specifically, from approximately in or around October 2019 to approximately in or around June 2020, QUILTER knowingly employed, used, persuaded, induced, and enticed Minor H, who was 14 to 15 years old in 2019 and 2020, and living in the Philippines throughout that time, to engage in sexually explicit conduct that involved the lascivious exhibition of Minor H's genitals and pubic area, for the purposes of having Minor H take photos and videos of the sexually explicit conduct. QUILTER knew that Minor H was approximately only 15 years old at the time they were communicating, and that Minor H was in the Philippines through 2019 and 2020. Through Facebook and Viber, QUILTER directed Minor H to each take images and videos of herself that involved sexually explicit conduct and send them to QUILTER, and sent money by wire transfer to Minor H's family in exchange for such images and videos.

For example, on or about October 11, 2019, QUILTER messaged Minor G at her and her sister Minor H's shared Facebook account, demanding "videos you and [Minor H] supposed to send me 4 videos . . . each with face and no cl[o]thes and 10 pics always

with face no clothes . . . ." On or about October 14, 2019, QUILTER received approximately 10 photos from Minor H including close-up photos of Minor H's genital area. QUILTER responded in part, "And this is f[o]r [Minor H] am not afraid why u are afraid to open your pussy hole u have to put your hands at botto[m] and open it." Minor H then sent a video of herself nude and displaying her genitals, using her fingers to spread apart her labia and masturbate, and QUILTER responded in part, "Hi I just watch your videos . . . ." Also, as set forth above, on or about October 30, 2019, QUILTER messaged Minor G and Minor H at their shared Facebook account, "Don't ever send me videos or pics with clothes on I don't want it." QUILTER also demanded additional nude and explicit videos and photos of Minor G and Minor H in or around November 2019. Also, on or about November 17, 2019, in response to another video from Minor H depicting her genitals while she masturbated, QUILTER messaged, "You did a very good job this time [Minor H] i like it when u put your finger inside but next time when u put it inside put more deeper inside ok i love u."

In or around February 2020, QUILTER proposed using code words to be safe on Facebook when referring to Minor G, Minor H, and QUILTER. From approximately in or around February 2020 to in or around June 2020, QUILTER and Minor H also communicated through Viber, and Minor H sent photos and videos to QUILTER through Viber. In or around October 2019 and June 2020, QUILTER sent multiple messages telling Minor H (and Minor G) to delete their conversations.

From approximately in or around October 2019 to approximately in or around June 2020, QUILTER received approximately 50 nude photos of Minor H, including

11

approximately 49 files in which Minor H's genitalia are exposed, and approximately 30 nude videos of Minor H in which her genitalia are exposed and/or she appears to be masturbating. QUILTER acknowledges that these images and videos from Minor H depicted Minor H lasciviously exhibiting her genitals and/or pubic area. As described above, in exchange for such images and videos from Minor H, QUILTER sent approximately 20 wire transfers totaling approximately $3,920 U.S. dollars to Minor H's (and Minor G's) family.

Stipulated Offense Four (Count 5)

Also, on or about May 27, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, QUILTER knowingly employed, used, persuaded, induced, and enticed a minor, namely, Minor A, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction defendant knew and had reason to know would be transported and transmitted using any means and facility of interstate and foreign commerce, and that visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, and which visual depiction was actually transported and transmitted in and affecting interstate and foreign commerce.

More specifically, on or about May 27, 2020, QUILTER knowingly employed, used, persuaded, induced, and enticed Minor A, who was 16 years old at the time, and living in the Philippines, to engage in sexually explicit conduct that involved the lascivious exhibition of Minor A's genitals and pubic area, for the purposes of having

12

Minor A take photos and videos of the sexually explicit conduct. QUILTER knew that Minor A was in the Philippines and only 16 years old on or about May 27, 2020. Through Facebook, QUILTER directed Minor A to take images and videos of herself that involved sexually explicit conduct and send them to QUILTER, and sent money by wire transfer to Minor A's family in exchange for such images and videos.

For example, on or about May 27, 2020, QUILTER messaged Minor A, "If u do what I tell u then I can trust u and I will make sure u can buy food for 2 weeks and your medication but i want to see your face and i want to see your Boobs Pussy clearly I want u to open your legs wide and your Pussy so i can see the beauty inside and don't be shy . . ." and "Am not forcing u but if u do this think of your little sister that she can e[a]t for 2 weeks everyday 3 meals a day and u get well." Minor A then responded, "I did it for you and I hope you are done . . . I did this to help my brothers and sister and to eat more for a day," and sent approximately three nude images of Minor A depicting her nude, with her breasts and genital area visible, and including an image of Minor A sitting with her legs apart with her face, breasts, and labia visible. QUILTER replied, "But u did not do what I ask u to open your legs and yo[u]r pussy so I can see inside baby," and "Yes baby u sit on Bed open your legs wide and open your pussy so I can see clearly inside pussy how beautiful it is baby don't be shy." Minor A later sent an additional photo depicting Minor A nude from the waist down and seated on the ground with her right leg up on the bed, and her shirt pulled up, so that her face, breasts, and labia are visible. QUILTER responded, among other things, "I cant wait to have Sex with u in December as u promise you will give me your Virginity," and "U did not take

13

the pic i told u the one i want you to take your fingers and open your pussy i wanted to see inside pussy how beautiful and pink." Minor A later sent another photo of herself sitting with her legs apart and using one hand to spread open her labia, and QUILTER responded, "Very good job an so proud of u and u have a very beautiful Pink Pussy i love it cant wait until December to taste it."

In total, QUILTER solicited and received approximately 10 nude photos of Minor A, including approximately 5 files in which her genitalia are exposed. QUILTER acknowledges that these images from Minor A depicted Minor A lasciviously exhibiting her genitals and/or pubic area. In exchange for such images, QUILTER sent approximately 3 wire transfers totaling approximately $810 U.S. dollars to Minor A's family.

<u>Stipulated Offense Five (Count 6)</u>

In or around June 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, QUILTER knowingly employed, used, persuaded, induced, and enticed a minor, namely, Minor B, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction defendant knew and had reason to know would be transported and transmitted using any means and facility of interstate and foreign commerce, and that visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, and which visual depiction was actually transported and transmitted in and affecting interstate and foreign commerce.

More specifically, in or around June 2020, QUILTER knowingly employed, used, persuaded, induced, and enticed Minor B, who was 16 years old at the time, and living in the Philippines, to engage in sexually explicit conduct that involved the lascivious exhibition of Minor B's genitals and pubic area, for the purposes of having Minor B take photos and videos of the sexually explicit conduct. QUILTER knew that Minor B was in the Philippines and only 16 years old at the time. Through Facebook, QUILTER directed Minor B to take images and videos of herself that involved sexually explicit conduct and send them to QUILTER, and sent money by wire transfer to Minor B's family in exchange for such images and videos.

For example, on or about June 8, 2020, QUILTER messaged Minor B to tell her to search "youtube Porn Videos Young Girls Ma[]sterbate" and directed Minor B to record and send QUILTER a 3-minute video of her with her pubic area shaved, "so I can see your Pussy c[l]ear." On approximately the next day, QUILTER received multiple videos depicting Minor B masturbating with her genitalia visible, and responded, ". . . u [did] a very good job baby thank you I love my Videos baby what is that white juice coming out from your Pussy." Also, on or about June 13, 2020, QUILTER messaged Minor B, "My love good morning baby when u making video I want you to start video when u taking clothes off also then u continue to make video ok I love u I miss u." On or about June 13, 2020, QUILTER sent another message asking, "Baby when u going to make a video can I see when u taking off your clothes then start doing . . . ." QUILTER then received from Minor B a video of Minor B masturbating

with her shirt pulled up and breasts and genital area visible. On or about June 17, 2020, QUILTER messaged Minor B, "delete our conversations now."

In total, QUILTER solicited and received approximately 8 nude photos of Minor B, including one file in which her genitalia are exposed, and approximately 4 videos of Minor B masturbating with her genitalia visible. QUILTER acknowledges that these videos from Minor B depicted Minor B lasciviously exhibiting her genitals and/or pubic area. In exchange for such images, QUILTER sent approximately 2 wire transfers totaling approximately $310 U.S. dollars to Minor B's family.

8.      Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline § 1B1.3, and establishes a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Relevant Conduct Involving Minor C and Minor D

In or around 2017 and 2018, QUILTER knowingly engaged in sexually explicit communications through Facebook with Minor C, who was 17 years old in 2017, when she began communicating with QUILTER. Through Facebook, QUILTER directed Minor C to take images and videos of herself that involved sexually explicit conduct, including masturbation and the lascivious exhibition of her genitals and/or pubic area, and send them to QUILTER. Minor C did so in or around 2017, and also sent to QUILTER in or around 2018 such images and videos of her younger sister Minor D, who was 13 years old at that time. QUILTER knew that Minor C and Minor D were living in the Philippines and that Minor C was 17 years old in 2017 and Minor D was

only 13 years old at the time that he communicated with Minor C and received images of Minor D. QUILTER sent money by wire transfer to Minor C's and Minor D's family in exchange for such images and videos from Minor C.

Relevant Conduct Involving Minor F

Also, in or around May and June 2020, QUILTER knowingly engaged in sexually explicit communications through Facebook with Minor F, who was approximately 15 years old in May 2020 when she began communicating with QUILTER. Through Facebook, QUILTER knowingly persuaded, induced, enticed, or coerced Minor F, whom he knew was under 18 years old at the time, to participate in live video calls with QUILTER involving sexually explicit conduct, including the lascivious exhibition of Minor F's genitals and/or pubic area.

For example, on or about May 21, 2020, QUILTER messaged Minor F, "when I go their [sic] in December I will see u naked so don't be shy now." On or about May 22, 2020, QUILTER messaged Minor F telling her to "sit and open your legs . . . So I can see your pussy clear." Shortly thereafter, QUILTER and Minor F had a video call, after which QUILTER commented, "Baby don't be Shy u have a beautiful Boobs and Beautiful Pussy." The same day, QUILTER messaged, "Make sure u delete all our conversations." Also, on or about May 27, 2020, QUILTER messaged Minor F, "it will be more beautiful when u Shave all Hair off and u open legs and open pussy wide so I can see inside . . . but put phone camera close so I can see clearly." On or about June 19, 2020, QUILTER messaged Minor F, "I love your Boobs so now can I see your Pussy

now u open it wide so I can see the inside," shortly before another video call with Minor F.

<u>Possession of Child Pornography</u>

In addition, QUILTER possessed the images and videos described above, and others sent from his minor victims and depicting child pornography, on three electronic devices, namely, the LG Cricket cell phone bearing IMEI 356865093072490, the Samsung tablet bearing serial number RF2DB2MJSDM, and a San Disk Ultra Plus Micro Card. Defendant acknowledges that all three devices belonged to him, and that in total, he possessed at least 126 videos and 239 images of child pornography, including the videos and images described above.

## **Maximum Statutory Penalties**

9.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 30 years' imprisonment, and a statutory mandatory minimum sentence of 15 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

18

c.    Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

d.    Defendant further understands that, pursuant to Title 18, United States Code, Section 3014, defendant will be assessed an additional $5,000 if the Court determines that he is a non-indigent person.

### Sentencing Guidelines Calculations

10.    Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

11.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

b. **Offense Level Calculations**.

<u>Count One</u>

i. The base offense level for the offense of conviction is 32, pursuant to Guideline § 2G2.1(a).

ii. Defendant receives a two-level increase, pursuant to § 2G2.1(b)(1)(B), because the offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years.

iii. Defendant receives a two-level increase, pursuant to § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.

iv. Defendant receives a four-level increase, pursuant to § 2G2.1(b)(4)(A), because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence.

v. Defendant receives a two-level increase, pursuant to Guideline § 2G2.1(b)(6)(B), because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct.

20

vi.     Accordingly, the total offense level for the offense of conviction is 42.

Stipulated Offense One

vii.    The base offense level is 22, pursuant to Guideline § 2G2.2(a)(2).

viii.   Defendant receives a two-level decrease, pursuant to Guideline § 2G2.2(b)(1), because Guideline § 2G2.2(a)(2) applies, defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor, and defendant did not intend to traffic in, or distribute, such material.

ix.     Defendant receives a five-level increase, pursuant to Guideline § 2G2.2(b)(5), because defendant engaged in a pattern of activity involving the sexual exploitation of a minor.

x.      Defendant receives a two-level increase, pursuant to Guideline § 2G2.2(b)(6), because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material.

xi.     Defendant receives a two-level increase, pursuant to Guideline § 2G2.2(b)(7)(A), because the offense involved at least 10 images, but fewer than 150.

xii.    Pursuant to Guideline § 2G2.2(c)(1), because the offense involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live

21

visual depiction of such conduct, Guideline § 2G2.1 applies, if the resulting offense level is greater than that determined above.

        xiii.      The base offense level is 32, pursuant to Guideline § 2G2.1(a).

        xiv.      Defendant receives a two-level increase, pursuant to Guideline § 2G2.1(b)(1)(B), because the offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years.

        xv.      Defendant receives a two-level increase, pursuant to Guideline § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.

        xvi.      Defendant receives a two-level increase, pursuant to Guideline § 2G2.1(b)(6)(B), because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct.

        xvii.      Accordingly, the total offense level for Stipulated Offense One is 38.

<u>Stipulated Offense Two</u>

        xviii.      The base offense level is 32, pursuant to Guideline § 2G2.1(a).

        xix.      Defendant receives a two-level increase, pursuant to § 2G2.1(b)(1)(B), because the offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years.

xx.     Defendant receives a two-level increase, pursuant to § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.

xxi.    Defendant receives a two-level increase, pursuant to Guideline § 2G2.1(b)(6)(B), because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct.

xxii.   Accordingly, the total offense level for Stipulated Offense Two is 38.

Stipulated Offense Three

xxiii.  The base offense level is 32, pursuant to Guideline § 2G2.1(a).

xxiv.   Defendant receives a two-level increase, pursuant to § 2G2.1(b)(1)(B), because the offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years.

xxv.    Defendant receives a two-level increase, pursuant to § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.

xxvi.   Defendant receives a two-level increase, pursuant to Guideline § 2G2.1(b)(6)(B), because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct.

23

xxvii.    Accordingly, the total offense level for Stipulated Offense Three is 38.

### Stipulated Offense Four

xxviii.    The base offense level is 32, pursuant to Guideline § 2G2.1(a).

xxix.    Defendant receives a two-level increase, pursuant to § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.

xxx.    Defendant receives a two-level increase, pursuant to Guideline § 2G2.1(b)(6)(B), because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct.

xxxi.    Accordingly, the total offense level for Stipulated Offense Four is 36.

### Stipulated Offense Five

xxxii.    The base offense level is 32, pursuant to Guideline § 2G2.1(a).

xxxiii.    Defendant receives a two-level increase, pursuant to § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.

xxxiv.    Defendant receives a two-level increase, pursuant to Guideline § 2G2.1(b)(6)(B), because the offense involved the use of a computer or an

interactive computer service to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct.

        xxxv.        Accordingly, the total offense level for Stipulated Offense Five is 36.

<u>Grouping</u>

        xxxvi.        Pursuant to Guideline § 3D1.2, none of the offenses group together and should be treated separately.

        1.        The group with the highest offense level is Count One, with an offense level of 42. That group is assigned one unit pursuant to Guideline § 3D1.4(a).

        2.        The group with the next highest offense level is Stipulated Offense One, with an offense level of 38. That group is assigned one unit pursuant to Guideline § 3D1.4(a), because it is equally serious or one to four levels less serious than Count One.

        3.        The group with the next highest offense level is Stipulated Offense Two, with an offense level of 38. That group is assigned one unit pursuant to Guideline § 3D1.4(a), because it is equally serious or one to four levels less serious than Count One.

        4.        The group with the next highest offense level is Stipulated Offense Three, with an offense level of 38. That group is assigned one unit pursuant to Guideline § 3D1.4(a), because it is equally serious or one to four levels less serious than Count One.

5.     The group with the next highest offense level is Stipulated Offense Four, with an offense level of 36. That group is assigned one-half unit pursuant to Guideline § 3D1.4(b), because it is five to eight levels less serious than Count One.

6.     The group with the next highest offense level is Stipulated Offense Five, with an offense level of 36. That group is assigned one-half unit pursuant to Guideline § 3D1.4(b), because it is five to eight levels less serious than Count One.

xxxvii.     The total number of units is five. Pursuant to Guideline § 3D1.4, because there are five units, there is a four-level increase in the offense level of the group with the highest offense level, which results in a combined offense level of 46.

xxxviii.     Defendant's instant offense of conviction is a covered sex crime, neither Guideline §§ 4B1.1 nor 4B1.5(a) applies, and the defendant engaged in a pattern of activity involving prohibited conduct. Therefore, pursuant to Guideline § 4B1.5(b)(1), the base offense level is increased five additional levels.

<u>Acceptance of Responsibility</u>

xxxix.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and

the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        xl.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

        d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 48 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of life imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Pursuant to Guideline § 5G1.1(a), because the statutory maximum sentence is 360 months, the advisory guidelines sentence is 360 months' imprisonment. Defendant also

acknowledges that he is subject to a statutory minimum sentence of 15 years' imprisonment.

e.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

12.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

13.     Each party is free to recommend whatever sentence it deems appropriate.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 2259, the Court must order restitution in the full amount of the losses of any victim of defendant's offense, as the terms "victim" and "loss" are defined in that section. The amount of restitution shall be determined by the Court at sentencing.

16.     Defendant also acknowledges that in addition to restitution due pursuant to Title 18, United States Code, Section 2259, he is liable for restitution pursuant to Title 18, United States Code, Section 3663A, and that defendant also agrees to pay additional restitution for Minors A, B, C, D, F, G, H, and I, arising from the stipulated offenses and relevant conduct set forth above, in an amount to be determined by the Court at sentencing, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

17.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United

29

States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

18.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

19.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

20.    Defendant acknowledges that on or about February 26, 2021, administrative forfeiture proceedings were commenced against certain property, including the LG Cricket cell phone bearing IMEI 356865093072490, the Samsung tablet bearing serial number RF2DB2MJSDM, and the San Disk Ultra Plus Micro Card. By signing this plea agreement, defendant acknowledges that he had notice of the administrative forfeiture proceeding, relinquishes any right, title, and interest he may have had in this property, withdraws any previously filed claims, and understands that an administrative decree of forfeiture has been entered, or will be entered, thereby extinguishing any claim he may have had in the seized property.

21.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment, as well as the forfeiture allegation as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

22.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 826.

23.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

24.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

31

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

25.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

26.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and

related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

27.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

28.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

29.     Defendant understands that pursuant to Title 18, United States Code, Sections 3583(d) and 4042(c), the Court must order as an explicit condition of supervised release that defendant register as a sex offender in compliance with the requirements of the Sex Offender Registration and Notification Act. Defendant also understands that he will be subject to federal and state sex offender registration requirements independent of supervised release, that those requirements may apply throughout his life, and that he may be subject to state and federal prosecution for failing to comply with applicable sex offender registration laws. Defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his duties to comply with current or future sex offender registration laws. Defendant nevertheless affirms that he wants to plead guilty regardless of any sex offender registration consequences that his guilty plea may entail.

30.     Defendant agrees to participate in psychological counseling and sex offender treatment as directed by the Probation Office as a condition of any sentence of probation or supervised release imposed.

### Other Terms

31.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

32.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

33.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

34.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

35.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

36.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

37.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____11/28/22_____

Signed by Erika Csicsila on behalf of
JOHN R. LAUSCH, JR.
United States Attorney


ASHLEY A. CHUNG
Assistant U.S. Attorney


KARL QUILTER
Defendant


DONNA FOLEY
Attorney for Defendant

37