UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KARL QUILTER | No. 20 CR 826<br><br>Judge Virginia M. Kendall |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully asks the Court to sentence defendant KARL QUILTER to his Guidelines sentence of 360 months' imprisonment and a 10-year term of supervised release, with the conditions recommended in the Presentence Investigation Report ("PSR").

**I.      Offense Conduct**

As described in defendant's Plea Agreement, the PSR, and the Government's Version of the Offense ("GVO"), from 2017 to 2020, defendant groomed at least nine minor girls in the Philippines, demanding, among other things, that they shave their pubic areas, send him sexually explicit photos and videos of themselves, and/or expose themselves and masturbate during live video calls with defendant.[1] *See* Dkt. 80 at 2-18; GVO at 1; PSR ¶¶ 1, 5-9. Over Facebook, Viber, and Skype, defendant, who was in his 50s, preyed on these vulnerable children, who ranged in age from

---

[1] At sentencing, the government plans to show the Court example images that defendant received from his victims and possessed on his devices. The government will make the images in question available to the defense for review prior to the sentencing hearing.

1

approximately 12 to 17 years old. Among other things, defendant manipulated the girls into believing that what they were doing was normal, used money transfers to their families to induce the victims to do what defendant asked, berated the girls when they did not follow his instructions, sent them photos of his own penis, and explicitly referenced his plans to have sex with several of the minors when he next visited the Philippines in December 2020. *See, e.g.*, GVO at 3; Dkt. 80 at 3, 6, 8, 13; PSR ¶ 41.

For example, **Minor A** was only 16 years old in 2020, when defendant coerced her into taking sexually explicit photos and videos of herself and sending them to defendant, in exchange for wire transfers so her family could afford food and medicine. Dkt. 80 at 12-14 (defendant messaged Minor A, "If u do what I tell you . . . I will make sure u can buy food for 2 weeks and your medication but i want to see your face and . . . your Boobs Pussy clearly I want u to open your legs wide and your Pussy so i can see the beauty inside . . . Am not forcing u but if u do this think of your little sister that she can e[a]t for 2 weeks everyday 3 meals a day and u get well"); GVO at 3; PSR ¶¶ 29-30. Defendant complained about several of the nude images Minor A first sent to him, commenting, "But u did not do what I ask u to open your legs and yo[u]r pussy so I can see inside baby." Dkt. 80 at 13. After Minor A sent another photo of herself nude from the waist down with her leg up on the bed and shirt pulled up, so that her face, breasts, and labia were visible, defendant responded, "I cant wait to have Sex with u in December as u promise you will give me your Virginity," but added "U did not take the pic i told u the one i want you to take your

2

fingers and open your pussy i wanted to see inside pussy . . . ." *Id.*; PSR ¶ 31. Minor A later sent another photo of herself in which she used a hand to spread apart her labia, and defendant responded, "Very good job" and "u have a very beautiful Pink Pussy I love it cant wait until December to taste it." Dkt. 80 at 14.

In total, defendant solicited and received approximately 10 nude photos of Minor A, in which she lasciviously exhibited her genitals and/or pubic area, and in exchange, he sent approximately 3 wire transfers totaling $810 U.S. dollars to Minor A's family. Dkt. 80 at 14; PSR ¶ 32. Minor A later told law enforcement that she was afraid defendant would show her photos to others, but that he had told her that what she was doing was normal because she was his girlfriend. PSR ¶ 32; GVO at 3.

**Minor B** was also approximately 16 years old in 2020, when defendant instructed her to watch pornography and send videos of herself masturbating. Dkt. 80 at 15 (defendant telling Minor B to search "youtube Porn Videos Young Girls Ma[]sterbate" and directing her to send a 3-minute video of her with her pubic area shaved "so I can see your Pussy c[l]ear"); PSR ¶ 33. The next day, defendant received multiple videos of Minor B masturbating with her genitalia visible and he praised her for doing "a very good job baby," also asking, "what is that white juice coming out from your Pussy." Dkt. 80 at 15; PSR ¶ 33. A few days later, defendant requested a video of Minor B stripping and then continuing to masturbate, and Minor B later sent a video of her masturbating with her shirt pulled up and breasts and genital area visible. Dkt. 80 at 15-16; PSR ¶ 34. Defendant also later instructed Minor B, "delete our conversations now." Dkt. 80 at 16; PSR ¶ 34.

In total, defendant solicited and received approximately 8 nude photos of Minor B and 4 videos of her masturbating with her genitalia visible, in exchange for his sending approximately 2 wire transfers totaling $310 U.S. dollars to Minor B's family. Dkt. 80 at 16; PSR ¶ 35.

**Minor C** was 17 years old in 2017, when defendant demanded images and videos of her masturbating and showing her genital/pubic area. Dkt. 80 at 16; PSR ¶ 36. According to Minor C, if defendant did not like her photos or videos, he would get angry and shout at her on video calls, but that she continued communicating with him because she needed money for school. GVO at 3. In 2018, Minor C also sent defendant sexually explicit images and videos of her younger sister **Minor D**, who was only 13 years old at the time. Dkt. 80 at 16-17; PSR ¶ 36. According to Minor D, she also had a live video call with defendant in which she touched her breasts and genitals. GVO at 3. In exchange, defendant sent money by wire transfer to Minor C's and Minor D's family. Dkt. 80 at 17; PSR ¶ 36.

**Minor E** was only 14 years old in 2018, when defendant demanded sexually explicit photos and videos from her. Dkt. 80 at 2-3; PSR ¶ 12. For example, he complained that certain nude photos from Minor E displaying her breasts and pubic area were "not good I cannot see anything . . . I can't even see your breast or your pussy I said I want you to open pussy like u did before," and "I want to see you put all your finger inside but take pic on side so I can see the finger go in all the way." Dkt. 80 at 3; PSR ¶¶ 12-13. Defendant made other similarly specific (as well as sado-masochistic) requests of Minor E and received photos and videos in response, in

4

exchange for money. *See, e.g.*, Dkt. 80 at 4-5 ("Ok I will send [money] but first u send the 5 pics of pussy but I want one like the first one u send . . . but put your finger all in from front so I can see it go far inside"; "I want to see your facial expression when finger is in . . . I want to see the f[i]ngers go in and out"; "all videos that u ma[]sturbate I ask u to put fingers all the way inside pussy"; "I cant see clearly if the bottle is in your [p]ussy [o]r u [j]ust [p]retend its inside"); PSR ¶¶ 14-15, 17. In response to other photos of Minor E showing her genitalia, defendant responded, "Good job," and "I hope this time when I go back [there] I can fuck my gf u said u my gf right." Dkt. 80 at 3-4; PSR ¶ 12. Defendant also suggested tattooing the inside of Minor E's legs "near your pussy Property of CONRAD [defendant's middle name]" and repeatedly instructed Minor E to delete their conversations and videos. Dkt. 80 at 3-5; PSR ¶ 16. According to Minor E, defendant previously had visited her in person in the Philippines and was upset when she invited friends over, as it meant that defendant could not have sex with her. PSR ¶ 40.

In total, defendant solicited and received approximately 91 nude photos and 54 nude videos of Minor E, in which her genitalia are exposed and/or she appears to be masturbating. Dkt. 80 at 5; PSR ¶ 18. In exchange, defendant sent approximately 18 wire transfers totaling $1,620 U.S. dollars to Minor E's family. Dkt. 80 at 5.

**Minor F** first began communicating with defendant when she was approximately 14 years old, and she was only 15 in 2020 when defendant induced and coerced her into joining live video calls with him in which she exposed her genital/pubic area. Dkt. 80 at 17; PSR ¶ 37; GVO at 3. For example, on various

5

occasions in May 2020, defendant messaged Minor F, "when I go [there] in December I will see u naked so don't be shy now," "sit and open your legs . . . So I can see your pussy clear," and "it will be more beautiful when u Shave all Hair off and u open legs and open pussy wide so I can see inside . . . but put phone camera close so I can see clearly." Dkt. 80 at 17; PSR ¶ 37. Minor F also said that on one live video call, he had told her to masturbate for three minutes while facing him. GVO at 3. Defendant also instructed Minor F to delete her conversations with him. Dkt. 80 at 17; PSR ¶ 37.

**Minor G** was only 12 to 13 years old in 2019 and 2020, and her sister **Minor H** only 14 to 15 years old, when defendant induced and directed them both to send sexually explicit (and exclusively nude) images and videos of themselves. *See* Dkt. 80 at 7-12 ("[Minor G and Minor H] supposed to send me 4 videos . . . each with face and no cl[o]thes and 10 pics always with face no clothes"; "Don't ever send me videos or pics with clothes on I don't want it"; "its always the same thing but this time you did some different u did it from behind I like that but nex[t] time make sure the camera see your pussy from behind when u bend down and u open it ok"; "this is f[o]r [Minor H] . . . why u are afraid to open your pussy hole u have to put your hands at botto[m] and open it"; "You did a very good job this time [Minor H] I like it when u put your finger inside but next time when u put it inside put more deeper inside"); PSR ¶¶ 22, 26-27. Defendant also repeatedly instructed Minor G and Minor H to delete their conversations and proposed using code words in their communications. Dkt. 80 at 9, 11; PSR ¶¶ 23, 27. And when Minor G told defendant that Minor G had gotten her period and was "a real lady now," defendant responded, "am hap[p]y to hear that so

6

meaning now we can have Sex when I go [there] . . . i will be the first man to have Sex with you I will be the one to get your Virginity baby." Dkt. 80 at 8; PSR ¶ 23.

In total, defendant received approximately 81 nude photos and 32 nude videos of Minor G, and approximately 50 nude photos and 30 nude videos of Minor H, in exchange for approximately 20 wire transfers totaling approximately $3,920 U.S. dollars to Minor G's and Minor H's family. Dkt. 80 at 9, 11-12; PSR ¶¶ 24, 28.

**Minor I** was 15 to 17 years old from 2018 to 2020, when defendant instructed her to send him sexually explicit photos and videos, complained about the images she sent, and specified what he wanted Minor I to do, film, and photograph. *See, e.g.*, Dkt. 80 at 6 (in response to photos showing Minor I's bare breasts and genitalia, "Baby why u did not listen to me . . . I told u I want u to open it with your fingers"; in response to other explicit photos, "For now I will accept but only if I can see your face . . . and only if u put fingers inside your pussy and ma[]sturbate like u see in the youtube videos"); PSR ¶¶ 19-20. When Minor I referenced possibly telling her mother about defendant, he responded, "Why are u doing this . . . u said u love me and this is our secret and u said u don't want me to go to jail." Dkt. 80 at 7; PSR ¶ 20. Also, according to Minor I, defendant demanded nude photos in exchange for money for her school graduation dress, and after Minor I sent a photo of herself only half naked but not showing her face, defendant became angry with her. GVO at 3.

Defendant received approximately 53 nude photos from Minor I, in exchange for his approximately 15 wire transfers to Minor I's family. Dkt. 80 at 7; PSR ¶ 21.

7

In total, defendant possessed at least 126 videos and 239 images of child pornography on several devices. *See* Dkt. 80 at 18; PSR at ¶ 38.

## II. Procedural Background

Defendant was later charged by indictment with sexual exploitation of children, in violation of Title 18, United States Code, Section 2251(a) (Counts 1-3, 5-6); and receipt of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(A) (Count 4). Dkt. 41; PSR ¶ 1.

On November 28, 2022, defendant pleaded guilty to Count 1, stipulated to the other offenses, and admitted relevant conduct involving Minors C, D, and F, pursuant to his plea agreement with the government. Dkt. 79-80; *see also* PSR ¶¶ 3-4.

## III. The PSR and Advisory Guideline Calculations

The government agrees with and has no objections to the Guidelines calculations set forth in the PSR.

### "Vulnerable Victim" Enhancement

With respect to Stipulated Offense Four, the government agrees with the Probation Office's application of the "vulnerable victim" enhancement under Guideline § 3A1.1(b)(1). PSR ¶ 86. Guideline 3A1.1(b)(1) provides for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). Application Note 2 to this section defines "vulnerable victim" to mean a victim of defendant's offense of conviction and/or relevant conduct "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal

8

conduct." U.S.S.G. § 3A1.1 n.2. Subsection (b) does not apply "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." *Id.* Thus, "if the offense guideline provides an enhancement for the age of the victim, this subjection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age." *Id.*

As the Probation Office noted in the PSR, defendant's messages with Minor A establish by a preponderance of the evidence that defendant knew that Minor A was vulnerable—separate and apart from her being underage—due to her physical health and her desperate financial need. PSR ¶ 86. He thus manipulated her into sending the explicit photos he wanted by promising, "I will make sure u can buy food for 2 weeks and your medication . . . Am not forcing u but if u do this think of your little sister that she can e[a]t for 2 weeks everyday 3 meals a day and u get well." Dkt. 80 at 13; PSR ¶ 86. Minor A did as defendant asked, sending multiple nude images of herself with her breasts and genital area visible, and explaining, "I did it for you and I hope you are done . . . I did this to help my brothers and sisters and to eat more for a day." Dkt. 80 at 13; PSR ¶ 86. In short, defendant's own statements establish that he preyed on her need for medicine, her family's financial straits, and her and her siblings' need for food—all non-age-based factors making Minor A particularly susceptible to defendant's criminal conduct.[2]

---

[2] *Cf. United States v. Sullivan*, 765 F.3d 712, 717 (7th Cir. 2014) ("A victim's financial desperation is an example of how a person can be susceptible to a financial crime."); *United States v. Shamsud-Din*, 580 F. App'x 468, 471 (7th Cir. 2014) (affirming enhancement where defendant preyed on Victim A's fear of another individual, and also based on Victim A's homelessness, lack of money, and economic uncertainty); *United States v. Guidry*, 817 F.3d 997, 1009 (7th Cir. 2016) (affirming enhancement

9

Due to defendant's already-high offense level, however, application of this additional enhancement does not ultimately affect defendant's Guidelines.[3] The final total offense level remains effectively capped at 43, which, when combined with defendant's criminal history category of I, would result in a Guidelines sentence of life imprisonment. But because defendant's offense of conviction carries a 360-month statutory maximum, his restricted Guideline term of imprisonment is 360 months. *See* U.S.S.G. § 5G1.1(a). Defendant also is subject to a mandatory minimum term of imprisonment of 15 years. *See* PSR at ¶¶ 48-104, 110-115, 168.

---

where victim was an addict and "Guidry preyed on her addiction in order to force her to engage in sexual acts"); *United States v. Johnson*, 874 F.3d 990, 1004 (7th Cir. 2017) (affirming enhancement where victims were vulnerable because, among other things, they "were extremely low-income, and were facing the threat of homelessness" and were thus "desperate to secure housing for their families"); *United States v. Issa*, 21 F.4th 504, 509 (7th Cir. 2021) (affirming vulnerable victim enhancements where defendant admitted that one victim "had recently lost her husband" and was thus "especially vulnerable to Issa's crimes").

[3] With the vulnerable-victim enhancement, the adjusted offense level for Stipulated Offense Four increases to 38 (as opposed to the 36 contemplated in the parties' plea agreement). *Compare* PSR ¶ 89 *with* Dkt. 80 at 24. As a result, under the grouping rules, Stipulated Offense Four is equally or from 1 to 4 levels less serious than Count One with the highest offense level (of 42), and is thus assigned one unit under Guideline § 3D1.4(a). PSR ¶ 97. This increases the total number of units to 5.5 (instead of 5, as contemplated in the plea agreement), and results in the addition of another five levels under Guideline § 3D1.4, bringing us to a combined adjusted offense level of 47. *Id.* ¶¶ 99-100. With the further five-level increase under Guideline § 4B1.5(b)(1), for a repeat and dangerous sex offender against minors, defendant's offense level is 52. *Id.* ¶ 101. And even following defendant's 3-level reduction for acceptance of responsibility, Application Note 2 to Chapter 5, Part A of the Guidelines (Sentencing Table) directs the court to treat any offense level of more than 43 as an offense level of 43. U.S.S.G. Ch. 5 Pt. A n.2. *Id.* ¶¶ 102-104.

**IV.     The Factors Set Forth in 18 U.S.C. § 3553(a) Warrant The Guidelines Sentence of 360 Months**

For the following reasons, the government respectfully submits that the Guidelines sentence of 360 months' imprisonment is sufficient, but not greater than necessary, to acknowledge the seriousness of the offense, provide just punishment of defendant, deter him and others from additional criminal conduct, and protect the public from further crime.

   **A. The Seriousness of the Offense, and the Need for Just Punishment**

It is impossible to overstate the seriousness of defendant's conduct and the need for just punishment. Victim by victim, and message by message, defendant used social media and the Internet to target and groom young Filipino girls.[4] Even worse, defendant specifically preyed on the victims' poverty and naivete, dangling the promise of money transfers and calling these children his girlfriends in order to manipulate and pressure them into sending him explicit photos and videos of

---

[4] *See, e.g.*, UNICEF, "National Study on Online Sexual Abuse and Exploitation of Children in the Philippines: Final Report," at XII, *available at* https://www.unicef.org/philippines/media/2601/file/National%20Study%20on%20Online%20Sexual%20Abuse%20and%20Exploitation%20of%20Children%20in%20the%20Philippines%20-%20Executive%20Summary.pdf (last accessed Apr. 19, 2023) ("The Philippines has emerged as the center of child sex abuse materials production in the world, with 80% of Filipino children vulnerable to online sexual abuse"); Steven Roche, *et al.*, "Online sexual exploitation of children in the Philippines: A scoping review," CHILDREN AND YOUTH SERVICES REVIEW 148 (2023), at 1-2, *available at* https://www.sciencedirect.com/science/article/pii/S0190740923000567 (last accessed Apr. 19, 2023) (observing that "[a]ccording to global law enforcement agencies, non-government organisations . . . and researchers, the Philippines is a global hotspot for OSEC [online sexual exploitation of children]" and that "[t]he emergence of OSEC, particularly in low and middle-income country contexts such as the Philippines, is consistently attributed to determinants and vulnerabilities relating to poverty, English language proficiency, broad access to information and communications technology, as well as highly established international remittance systems that facilitate payments").

11

themselves and participating in live sexual video calls with him. This was not a one-time aberration, but rather, a years-long pattern of predatory abuse and exploitation of minors.

The seriousness of defendant's conduct, and the trauma he inflicted on his victims, are plain. As the Probation Office already has noted, his obscene messages and demands "degrade[d] the minor victims, . . . debas[ing] them [as mere] sexual object[s for defendant]." Rec. at 2.[5] With each victim, each sexual message, and each explicit image demanded or received, defendant robbed young girls of their childhood. This court also should note defendant's prior travel to the Philippines, where he met in person with at least one of his victims (Minor E) (*see, e.g.*, Dkt. 1 ¶¶ 23-27; GVO at 3; PSR ¶ 136 (defendant's wife did not know why defendant previously traveled alone to the Philippines on two occasions)), as well as defendant's stated plans for in-person vaginal and oral sexual contact with *multiple* child victims (Minor A, Minor E, Minor G) when he next planned to visit the Philippines in December 2020. *See* Dkt. 80 at 3-4 (". . . I hope this time when I go back [there] I can fuck my gf u said u my gf right"); *id.* at 8 (". . . now we can have Sex when I go [there] baby . . . i will be the first man to have Sex with you I will be the one to get your Virginity baby"); *id.* at 13-14 ("I cant wait to have Sex with u in December as u promise you will give me your Virginity,"

---

[5] *See* UNICEF Final Report at XIII ("The whole OSAEC [online sexual abuse and exploitation of children] experience has an impact on [child victims'] psychological well-being, sense of safety and control, and view of the world"); Roche at 2 (noting that though "[t]he specific and long-term impacts of OSEC on survivors in the Philippines is unknown and under-researched, . . . the impact of CSA [child sexual abuse] is wide ranging and can be both immediate and long-term," including negative impacts to cognitive functioning, mental health issues like posttraumatic stress disorder, depression, and anxiety, and long-term impact to physical, psychological, social, educative, and economic well-being).

12

and ". . . u have a very beautiful Pink Pussy i love it cant wait until December to taste it"). (Fortunately, defendant's planned trip was thwarted by his arrest in this case.)

Defendant's victims deserve their childhoods, deserve dignity, and deserve justice. *See United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) (dismissing as "erroneous" the "belief that a sentence affects only the life of the criminal and not the lives of his victims"). A Guidelines sentence of 360 months' imprisonment—only 3 years and 4 months for each victim, when divided evenly across defendant's nine minor victims—and 10 years' supervised release, together accurately reflects the seriousness of defendant's heinous conduct and appropriately punishes it.

### B. Defendant's History and Characteristics, and the Need to Protect the Public and Afford Adequate Deterrence

Defendant's history and characteristics evince little mitigation, all of which is thoroughly outweighed by the aggravating factors in this case. Though defendant has no prior criminal convictions, his offense conduct is long-term and recent, and bespeaks the need for a significant sentence to protect the public and specifically deter defendant from further sexual exploitation of minors. The Probation Office already has noted defendant's concerning apparent denial of his sexual interests and habits. Rec. at 3. While on pretrial release and receiving individualized treatment, defendant self-reported low need for treatment and evinced low responsivity to treatment. PSR ¶ 143. And even now, post-conviction, defendant claims, incredibly, to have never viewed pornography prior to age 52 or outside of the instant offense, and to not masturbate nor think about sex. *Id.* ¶¶ 146-47. Defendant also claims to have not spent much time online prior to his arrest in this case, because of his work

13

scheduled. *Id.* ¶ 155. His claims are belied by his own voluminous messages with his victims, in which he specifically directed them to certain kinds of pornography, solicited obscene sexual content from them, made lewd references to taking his victims' virginity, and communicated near constantly, *including while he was at work. See, e.g.*, PSR ¶¶ 41, 155; Dkt. 1 ¶¶ 17, 20-21.

Defendant also groomed and exploited his minor victims—for years—knowing full well that what he was doing was wrong and illegal. Even as he instructed multiple victims (Minor B, Minor G, Minor H, Minor I) to delete his communications with them, speak in coded language, and not tell their parents about defendant, he continued to demand obscene photos, videos, and live calls with child after child. His compulsive, knowing predation and ongoing denial indicate a high risk of recidivism and a concomitant need for a significant sentence, both to protect the public and specifically deter defendant from further crimes against children.

The government credits defendant's family support, his age (58 at the time of sentencing), and his recent physical-health issues. *See* PSR ¶¶ 140-41. These factors, however, do not excuse defendant's crimes, particularly where defendant's age, health conditions, and family support did nothing to slow down or deter him from exploiting numerous minors over the course of years and planning a third trip to the Philippines to have sex with several victims. *See United States v. Portman*, 599 F.3d 633, 637 (7th Cir. 2010), *as amended* (Mar. 24, 2010) ("a defendant must show why personal characteristics act as a mitigating, not potentially aggravating, factor in a case where the defendant may not be able to control his sexual impulses").

In short, while there is mitigation in defendant's personal characteristics and history, it already has been accounted for through defendant's plea agreement, which capped his sentence at 360 months (instead of what otherwise would have been a Guidelines sentence of life imprisonment). *See* PSR at ¶¶ 167-68. The government acknowledges that given defendant's age and health, there is a possibility that his Guidelines sentence could end up a de facto life sentence. *See United States v. Jones*, 56 F.4th 455, 513 (7th Cir. 2022) (underscoring importance of appreciating the potential severity of such a sentence); *United States v. Fitzpatrick*, 32 F.4th 644, 652 (7th Cir. 2022) (same). Given, however, the horrific nature of defendant's conduct, his risk of recidivism, and the need to protect other minors and deter other would-be child predators, the government respectfully submits that the Guidelines sentence is warranted here.[6] *See Goldberg*, 491 F.3d at 672 (explaining that "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor" and "[t]he logic of deterrence suggests that the lighter the punishment for [child pornography offenses], the greater the customer demand for it and so the more will be produced").

---

[6] A Guidelines sentence also will assist in ensuring the goals of fair and uniform sentencing and avoiding unwarranted sentencing disparities. *See, e.g.*, *Gall v. United States*, 522 U.S. 38, 46-47 (2007) (Guidelines deserve serious consideration as they are "the product of careful study based upon extensive empirical evidence derived from the review of thousands of individual sentencing decisions").

### C. Need to Provide Defendant with Treatment

The government also requests that defendant's sentence include sex-offender treatment.[7] The PSR notes defendant's willingness to participate in sex-offender treatment while incarcerated and on supervised release. PSR at ¶ 149. The government supports incarcerating the defendant at a facility in which he can obtain such treatment. As discussed further below, the government also supports a ten-year term of supervised release, including conditions requiring participation in a sex-offender treatment programs, in the hopes of helping defendant become and remain a law-abiding member of society upon his release.

## V. Restitution

Under the Victims of Trafficking and Violence Protection Act (VTVPA) and the Mandatory Victims Restitution Act (MVRA), the defendant must pay for "the full amount of the victim's losses," which may include the following:

(A) Medical services relating to physical, psychiatric, or psychological care;

(B) Physical and occupational therapy or rehabilitation;

(C) Necessary transportation, temporary housing, and child care expenses;

(D) Lost income;

(E) Reasonable attorneys' fees, as well as other costs incurred; and

(F) Any other relevant losses suffered by the victim as a proximate result of the offense.

---

[7] The government is not asking that the Court impose or lengthen a term of imprisonment so that defendant may obtain treatment. *See United States v. Gallagher*, 526 F. App'x 658, 661-64 (7th Cir. 2013).

16

18 U.S.C. § 2259(b)(1)-(3), (c)(2). As noted in its motion for extension of time to compile restitution information (Dkt. 81), the government is coordinating with law enforcement in the Philippines to investigate what restitution may be owed. The Court has granted the government's motion to extend the date for determining restitution, pursuant to 18 U.S.C. § 3664(d)(5), to 45 days after sentencing (Dkt 82).

## VI. Forfeiture

U.S. Customs and Border Protection already completed administrative forfeiture of defendant's devices, and the government will move to dismiss the forfeiture allegation at sentencing.

## VII. Supervised Release

A supervised-release term of at least five years and up to life must be imposed in this case. The government requests that the Court impose a term of supervised release of ten years, to allow for sufficient supervision of defendant's reintegration into society. A ten-year term is warranted here based on defendant's long-term and repeated exploitation of children; his "apparent reluctance to admit to his sexual interests/history" (Rec. at 3); and the need to ensure the safety of the public and facilitate defendant's treatment. The government agrees with, and requests that defendant be required to comply with, the conditions set forth on pages 28 to 33 of the PSR, all of which will facilitate supervision by the Probation Office, promote defendant's respect for the law, deter him from committing future crimes, support his rehabilitation, and help ensure that he is engaged in lawful pursuits upon release.

## VIII. Conclusion

For the reasons set forth above, the government respectfully requests that the Court sentence defendant to a term of 360 months' imprisonment and impose a 10-year term of supervised release that includes the conditions specified in the PSR.

        Respectfully submitted,

        MORRIS PASQUAL
        Acting United States Attorney

By:    /s/ *Ashley A. Chung*
        ASHLEY A. CHUNG
        Assistant United States Attorney
        219 S. Dearborn Street, Fifth Floor
        Chicago, Illinois 60604
        (312) 697-4089

Dated: April 19, 2023